WO                         IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA


HELEN SCHARF, et al.,                    )
                                         )
                          Plaintiffs,    )
                                         )
            vs.                          )
                                         )
ARNALDO TRABUCCO, et al.,                )
                                         )        No. 3:14-cv-8183-HRH
                                         )        (Prescott Division)
                          Defendants,    )
_____ )


## O R D E R

### Motion for Partial Summary Judgment

Defendant PHC-Fort Mohave, Inc. d/b/a Valley View Medical Center moves for partial summary judgment.[1]  This motion is opposed.[2]  Oral argument was not requested and is not deemed necessary.

### Facts

Plaintiffs are Helen Scharf, the surviving spouse and personal representative of the estate of Gerald Scharf; and Karen Bright and Randall Scharf, the adult children of Gerald

_____

[1]Docket No. 66.

[2]Docket No. 67.

Scharf, deceased.  Defendants are Arnaldo Trabucco, M.D.; the Institute of Urology, LLC; and PHC-Fort Mohave, Inc., dba Valley View Medical Center (VVMC).  Also included as defendants in plaintiffs' complaint are DOES I through X, the names of which plaintiffs were unaware at the time they filed their complaint.[3]

On September 24, 2012, Dr. Trabucco performed a hand-assisted laparoscopic nephrectomy (removal of the kidney) on Gerald Scharf at VVMC.  Mr. Scharf developed complications and was transferred to Sunrise Hospital, where a second surgery was performed, but on September 27, 2012, Mr. Scharf died.  On September 23, 2014, plaintiffs commenced this action, in which they assert negligence and wrongful death claims against defendants.

In their complaint, plaintiffs identify the DOES I through X as "persons who were present in the operating room, PACU or ICU who provided intraoperative care or advice and/or post-operative care to Gerald Scharf."[4]  Plaintiffs allege that the care and treatment provided by Dr. Trabucco and DOES I through X fell below the applicable standards of care.[5]  Plaintiffs further allege that VVMC is "vicariously liable for the negligence of ... Dr. Trabucco

---

[3]Complaint at 2, ¶ 7, Docket No. 1.

[4]Id. at 3, ¶ 14.

[5]Id. at 23, ¶¶ 67-68.

-2-

and DOES I through X."[6]  Plaintiffs allege that VVMC is vicariously liable because it was the employer of these individuals.[7]

VVMC now moves for summary judgment on plaintiffs' vicarious liability claims.

<u>Discussion</u>

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

First, as to plaintiffs' vicarious liability claim based on Dr. Trabucco's alleged negligence, plaintiffs agree that VVMC is entitled to summary judgment on this claim because Dr. Trabucco was not an employee of VVMC nor under VVMC's control.[8]

Second, to the extent that plaintiffs have vicarious liability claims against health care providers other than the nurses involved in Mr. Scharf's care while he was hospitalized at VVMC, VVMC is entitled to summary judgment on these claims.  Plaintiffs did not respond to VVMC's argument that it is entitled to summary judgment on these claims.  Thus, plaintiffs are deemed to have abandoned any such claims.  <u>See</u> <u>Shakur v. Schriro</u>, 514 F.3d 878, 892 (9th Cir. 2008) (citations omitted) ("We have previously held that a plaintiff has abandoned ... claims by not raising them in opposition to [the defendant's] motion for summary judgment").

---

[6]<u>Id.</u> at 27, ¶ 73.

[7]<u>Id.</u> at 23, ¶ 66.

[8]Opposition [etc.] at 2, Docket No. 67.

Finally, as to any vicarious liability claims plaintiffs might have based on the negligence of the nurses who provided care to Mr. Scharf while he was hospitalized at VVMC, VVMC argues that it is entitled to summary judgment on these claims because plaintiffs have not disclosed a nursing expert.  Plaintiffs do not dispute that under the Arizona law that is applicable to this diversity case, they are required to "retain a nursing expert to show any actions by the nursing staff at Valley View Medical Center fell below the standard of care."[9]  Plaintiffs also do not dispute that they have not yet retained a nursing expert.  Rather, plaintiffs seek leave to obtain such an expert now.  More specifically, plaintiffs request leave to depose the nurses who provided care to Mr. Scharf, "and then, based upon their testimony, hire the appropriate experts if the testimony evidenced a breach of the standard of care."[10]

The deadline for plaintiffs' expert witness disclosures was December 15, 2015.[11]  The deadline for all discovery to be completed in this case was May 2, 2016.[12]  Nonetheless,

---

[9]Opposition [etc.] at 2, Docket No. 67.

[10]Id. at 3.

[11]Order re Amendment of Discovery Plan and Pretrial Motion Deadlines at 1, Docket No. 47.

[12]Id. at 2-3.  On May 26, 2016, Dr. Trabucco moved to amend the scheduling order because he contends that the parties have not been able to take depositions of six previously-disclosed fact witnesses and three previously-disclosed expert witnesses. Docket No. 71.  The other parties have not joined in this motion and it is not clear whether the nurses who plaintiffs wish to depose are among the six previously-disclosed fact (continued...)

plaintiffs request that they be allowed to take the nurses' depositions and retain a nursing expert at this time because their "original theory of liability did not focus on the nursing staff."[13]  Plaintiffs' counsel avers that during the April 22, 2016 deposition of plaintiffs' expert, Dr. Danoff, Dr. Danoff "dramatically changed his testimony" as to what happened during Mr. Scharf's procedure and that plaintiffs "now believe that one of [their] strongest claims is the nurses' failure to meet the accepted standards of care post-operatively, if the nurses failed to notify Dr. Trabucco of Mr. Scharf's progressively developing lower extremity paralysis."[14]  Plaintiffs' counsel avers that up until now plaintiffs "did not investigate the post-operative care because our experts advised us that the injury occurred during the procedure."[15]  Thus, plaintiffs contend that they only recently learned that they would need a nursing expert. Plaintiffs argue that allowing them to extend or reopen discovery so that they can retain a nursing expert and depose the nurses will not prejudice VVMC because discovery just closed and plaintiffs anticipate that expert depositions could be completed by August 2016.

---

[12](...continued)
witnesses.

[13]Opposition [etc.] at 2, Docket No. 67.

[14]Declaration of Roger Sundling at ¶¶ 4, 6-7, attached to Opposition [etc.], Docket No. 67.

[15]Id. at ¶ 6.

VVMC suggests that plaintiffs' request be analyzed under Rule 37(c)(1), Federal Rules of Civil Procedure, which provides that "[i]f a party fails to ... identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that ... witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." VVMC argues that plaintiffs cannot show that their failure to disclose a nursing expert was substantially justified. VVMC disputes that plaintiffs just recently learned that they would need a nursing expert. Although plaintiffs contend that they did not think they would need a nursing expert until the deposition of their expert on April 22, 2016, VVMC points out that plaintiffs alleged in their complaint that the care provided by the nursing staff at VVMC fell below the applicable standard of care.[16] In other words, the negligence of the nurses and the standard of care applicable to them has been at issue since plaintiffs filed this case. Plaintiffs could have retained a nursing expert long before now. Plaintiffs contend that they decided not to investigate their allegations about the nursing staff based on Dr. Danoff's original theory of the case, which was a choice plaintiffs could make. But having made that choice, plaintiffs are stuck with it. Plaintiffs chose to not investigate their nursing negligence claims and thus did not timely disclose a nursing expert. This is not a situation in which plaintiffs learned new facts right before the close of discovery or after discovery was closed. Rather, this is a case in which plaintiffs failed to investigate the allegations that they made in their

---

[16]Complaint at 23, ¶ 68, Docket No. 1.

complaint in a timely manner.  And, as VVMC points out, plaintiffs are not even certain at this point whether they have nursing negligence claims.  Plaintiffs want to depose two of the nurses and <u>then</u> decide if they will need to retain a nursing expert.  But, plaintiffs have not provided any explanation as to why they have not already deposed the nurses, who are fact witnesses, other than they were pursuing a different theory of the case.  This is not a sufficient reason to amend the scheduling order, which is what plaintiffs are requesting.  Rule 16(b)(4), Federal Rules of Civil Procedure, which governs amendments to scheduling orders, provides that a scheduling order can only be modified for good cause.  Plaintiffs have not shown good cause for their failure to depose the nurses prior to the close of discovery.

In sum, plaintiffs' failure to timely disclose a nursing expert was not substantially justified nor have plaintiffs shown good cause to amend the scheduling order.  Thus, VVMC is entitled to summary judgment on plaintiffs' vicarious liability claim as to the nursing staff because plaintiffs do not have the required expert testimony to support a negligence claim against the nurses.

<u>Conclusion</u>

Based on the foregoing, VVMC's motion for partial summary judgment[17] is granted.

DATED at Anchorage, Alaska, this 2nd day of June, 2016.

/s/ H. Russel Holland
United States District Judge

[17]Docket No. 66.