WO             IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

HELEN SCHARF, et al., )
 )
              Plaintiffs, )
 )
vs. )
 )
ARNALDO TRABUCCO, M.D., et al., )
 )   No. 3:14-cv-8183-HRH
              Defendants. )   (Prescott Division)
_____)

O R D E R

Motion for Summary Judgment

Defendants Arnaldo Trabucco, M.D., and the Institute of Urology, L.L.C. move for summary judgment on all of plaintiffs' claims.[1] This motion is opposed.[2] Oral argument was not requested and is not deemed necessary.

Facts

Plaintiffs are Helen Scharf, the surviving spouse and personal representative of the estate of Gerald Scharf; and Karen Bright and Randall Scharf, the adult children of Gerald

---

[1] Docket No. 79.

[2] Docket No. 82.

-1-

Scharf, deceased.  Defendants are Arnaldo Trabucco, M.D., and the Institute of Urology, LLC.[3]

"On July 13, 2012, ... Dr. Trabucco evaluated Gerald Scharf at the Institute of Urology in Fort Mohave, Arizona."[4]  Dr. Trabucco confirmed that Mr. Scharf had a "left upper pole renal mass...."[5]  On September 11, 2012, Mr. and Mrs. Scharf and two of Mrs. Scharf's daughters met with Dr. Trabucco to discuss surgery to remove the mass.  At that time, Dr. Trabucco explained various complications and risks associated with such a surgery.  Mrs. Scharf and her daughters aver that Dr. Trabucco did not tell Mr. Scharf "about the risks of paralysis or death" associated with the surgery.[6]  Mrs. Scharf and her daughters also aver that Dr. Trabucco did not tell Mr. Scharf "of the alternatives of not doing surgery or doing an ablation procedure."[7]  Mrs. Scharf avers that Dr. Trabucco told Mr. Scharf that "he had to

---

[3]PHC-Fort Mohave, Inc., dba Valley View Medical Center is also a defendant in this matter but the instant motion does not involve this defendant.

[4]Complaint at 3, ¶ 17, Docket No. 1.

[5]Id.

[6]Declaration of Helen Scharf [etc.] at 1, ¶ 6, Exhibit F; Declaration of Debra Stubinger [etc.] at 1, ¶ 5, Exhibit H; Declaration of Cindy Richards [etc.] at 1, ¶ 5, Exhibit I, Opposition to Arnaldo Trabucco, M.D.'s Motion for Summary Judgment, Docket No. 82.

[7]Helen Scharf Declaration at 2, ¶ 7, Exhibit F; Stubinger Declaration at 2, ¶¶ 6 & 8, Exhibit H; Richards Declaration at 2, ¶¶ 6 & 8, Exhibit I, Opposition to Arnaldo Trabucco, M.D.'s Motion for Summary Judgment, Docket No. 82.

have all or part of [his] kidney removed either by a laparoscopic or open procedure."[8] However, one of plaintiffs' expert, Dr. Danoff, testified that Mr. Scharf could have possibly lived for 5-10 years even if the mass were not removed.[9]

On September 24, 2012, Dr. Trabucco performed a hand-assisted laparoscopic nephrectomy (removal of the kidney) on Mr. Scharf at the Valley View Medical Center. Mrs. Scharf avers that "[w]hen [she] first saw [Mr.] Scharf[] in the ICU post-operatively he could not move or feel his legs."[10] At 3:00 a.m. on September 25, 2012, Dr. Trabucco was informed that Mr. Scharf had no movement or sensation in his legs or feet. Dr. Trabucco arrived at VVMC around 7:00 a.m.

Mr. Scharf was transferred to Sunrise Hospital around 4 p.m. on September 25, 2012. Upon his arrival at Sunrise, an abdominal aortogram was done and the impression was that Mr. Scharf had total occlusion of the abdominal aorta.[11] Mr. Scharf then underwent a second surgery, but on September 27, 2012, Mr. Scharf died. Mr. Scharf's autopsy showed that he had "severe calcific aortic atherosclorosis, primarily at the aortic arch and abdominal aorta

---

[8]Helen Scharf Declaration at 2, ¶ 9, Exhibit F, Opposition to Arnaldo Trabucco, M.D.'s Motion for Summary Judgment, Docket No. 82.

[9]Deposition of Dudley Danoff, M.D. at 102:17-103:3, Exhibit G, Opposition to Arnaldo Trabucco, M.D.'s Motion for Summary Judgment, Docket No. 82.

[10]Helen Scharf Declaration at 2, ¶ 10, Exhibit F; Opposition to Arnaldo Trabucco, M.D.'s Motion for Summary Judgment, Docket No. 82.

[11]Complaint at 16-17, ¶ 57, Docket No. 1.

at the level of the branching of the renal arteries with small adherent thrombus."[12] Defendants' expert, Dr. Treiman, opined "that Mr. Scharf's outcome was attributable to his underlying atherosclerosis...."[13]

On September 23, 2014, plaintiffs commenced this action, in which they assert medical malpractice and wrongful death claims against defendants. Plaintiffs allege that there was a lack of informed consent, that Dr. Trabucco negligently performed the surgery, and that Dr. Trabucco provided negligent post-operative care.

Defendants now move for summary judgment on all of plaintiffs' claims against them.

## Discussion

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The initial burden is on the moving party to show that there is an absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, then the non-moving party must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). In deciding a motion for summary judgment, the court views the evidence of the non-movant in the light most favorable to that party, and all justifiable inferences are also to be drawn in its favor. Id. at 255. "[T]he court's ultimate inquiry is to determine whether the 'specific

---

[12] Id. at 21, ¶ 62.

[13] Expert Report of Gerald Treiman, M.D., at 2, Exhibit L, Opposition to Arnaldo Trabucco, M.D.'s Motion for Summary Judgment, Docket No. 82.

facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

As an initial matter, plaintiffs argue that defendants' motion for summary judgment should be denied because defendants did not file a separate statement of facts as required by Local Rule 56.1. This argument is not well-taken as the scheduling and planning order in this case expressly provides that the parties are "not [to] file a separate statement of facts" and that separate statement of facts "will be stricken."[14]

Secondly, plaintiffs concede that they have abandoned their claims based on allegations that Dr. Trabucco negligently performed the surgery.[15] Thus, defendants are entitled to summary judgment on plaintiffs' claims that are based on allegations that Dr. Trabucco negligently performed Mr. Scharf's surgery.

We turn then to plaintiffs' claims based on allegations of a lack of informed consent and allegations that Dr. Trabucco provided negligent post-operative care. "Medical

---

[14]Scheduling and Planning Order at 6-7, Docket No. 38. The court elected not to strike plaintiffs' separate statement of facts filed at Docket No. 83 because it was relatively short.

[15]Opposition to Arnaldo Trabucco, M.D.'s Motion for Summary Judgment at 14, Docket No. 82.

malpractice[16] is established by showing a breach of the applicable standard of care and that the breach caused the plaintiff's injuries."[17] Rice v. Brakel, 310 P.3d 16, 22 (Ariz. Ct. App. 2013). "The medical standard of care must be established by expert medical testimony unless the conduct complained of is readily ascertainable by a layman." Evans v. Bernhard, 533 P.2d 721, 724 (Ariz. Ct. App. 1975).

"[A] medical procedure performed without informed consent does not, in itself, proximately cause an actionable injury to a plaintiff; rather, a plaintiff must show he or she has suffered some injury as a result of the undisclosed risk." Gorney v. Meaney, 150 P.3d 799, 804 (Ariz. Ct. App. 2007). "[P]laintiffs alleging lack of informed consent must show two types of causation: 1) adequate disclosure would have caused the plaintiff to decline the treatment, and 2) the treatment proximately caused injury to the plaintiff." Id. "Expert testimony is not required for the first type of causation because it is plainly a matter to which plaintiffs themselves could testify and is within the knowledge of the average layperson."

---

[16]A lack of informed consent claim is a medical malpractice claim. McGrady v. Wright, 729 P.2d 338, 341 (Ariz. Ct. App. 1986).

[17]Plaintiffs' wrongful death claims against defendants would require the same proof since they are based on the alleged malpractice. The only difference between plaintiffs' medical malpractice claims and plaintiffs' wrongful death claims is that "damages are not an essential element of a statutory wrongful death claim. Because the jury may award whatever amount 'it deems fair and just,' the jury is not statutorily required to award any compensation." Walsh v. Advanced Cardiac Specialists Chartered, 273 P.3d 645, 648 (Ariz. 2012) (quoting A.R.S. § 12-613).

Id. " Expert testimony is required, however, to demonstrate that the treatment proximately caused injury to the plaintiff." Id.

Plaintiffs allege that there was a lack of informed consent here because, as Mrs. Scharf and her daughters aver, Mr. Scharf was not advised that paralysis or death were possible risks of the surgery nor was he advised that there were alternatives to surgery. Dr. Danoff avers that "[a]ccepted standards of care require the urologist to tell the patient the risks of death and paralysis, regardless of how small the risk" and that "[a]ccepted standards of care require that the urologist tell his patient of the alternatives to kidney removal."[18] Dr. Danoff also avers that "[a]ccepted standards of care require that the urologist tell his patient the alternatives of not doing the procedure and periodically observing the progress of the tumor growth. The urologist is also required to tell the patient of the ablation procedure."[19] And Dr. Danoff avers that "[f]ailure to advise the patient of the[se] risks and alternatives is negligent."[20] Mrs. Scharf avers that Mr. Scharf "would have chosen not to have any surgery had he been given [a] choice"[21] and her daughters aver that "[h]ad the options of not removing the kidney and periodically monitoring the condition of the small tumor [been

---

[18] Declaration of Dudley Seth Danoff, M.D. [etc.] at 1, ¶¶ 5-6, Exhibit J, Opposition to Arnaldo Trabucco's, M.D.'s Motion for Summary Judgment, Docket No. 82.

[19] Id. at 2, ¶ 7.

[20] Id. at ¶ 8.

[21] Helen Scharf Declaration at 2, ¶ 8, Exhibit F; Opposition to Arnaldo Trabucco, M.D.'s Motion for Summary Judgment, Docket No. 82.

given], [we] know [Mr. Scharf] would have chosen that option" and that had Mr. Scharf been given "the option of ablation of the tumor," they believed he "would have asked for a second opinion regarding that option."[22] Plaintiffs argue that this evidence is sufficient to create genuine issues of material fact as to their lack of informed consent claims.

Defendants first argue that Dr. Danoff is not qualified to render standard of care opinions. A.R.S. § 12-2604 sets out the expert witness qualifications for Arizona medical malpractice cases.[23] A.R.S. § 12-2604(A) provides, in pertinent part:

> In an action alleging medical malpractice, a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state or another state and the person meets the following criteria:
>
> 1. If the party against whom or on whose behalf the testimony is offered is or claims to be a specialist, specializes at the time of the occurrence that is the basis for the action in the same specialty or claimed specialty as the party against whom or on whose behalf the testimony is offered. If the party against whom or on whose behalf the testimony is offered is or claims to be a specialist who is board certified, the expert witness shall be a specialist who is board certified in that specialty or claimed specialty.

---

[22]Stubinger Declaration at 2, ¶¶ 7-8, Exhibit H; Richards Declaration at 2, ¶¶ 7-8, Exhibit I; Opposition to Arnaldo Trabucco, M.D.'s Motion for Summary Judgment, Docket No. 82.

[23]A.R.S. § 2604(A) is a substantive law that applies in this diversity action. Mann v. United States, Case No. CV–11–8018–PCT–LOA, 2012 WL 273690, at *10 (D. Ariz. Jan. 31, 2012); Wright v. United States, Case No. 06-01-01788-PHX-NVW, 2008 WL 820557, at *5 (D. Ariz. March 25, 2008). Contrary to defendants' contention in their reply brief, plaintiffs have not taken the position that A.R.S. § 12-2604(A) does not apply in this case.

> 2. During the year immediately preceding the occurrence giving rise to the lawsuit, devoted a majority of the person's professional time to either or both of the following:
>
> (a) The active clinical practice of the same health profession as the defendant and, if the defendant is or claims to be a specialist, in the same specialty or claimed specialty.
>
> (b) The instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession as the defendant and, if the defendant is or claims to be a specialist, in an accredited health professional school or accredited residency or clinical research program in the same specialty or claimed specialty.

Although both Dr. Trabucco and Dr. Danoff are board-certified urologists, defendants contend that Dr. Danoff does not meet the requirements of paragraph 2 because in the year prior to Mr. Scharf's surgery, Dr. Danoff did not devote the majority of his time to the same active practice as Dr. Trabucco. Defendants' contention is based on the fact that Dr. Danoff testified that he had not performed a hand-assisted laparoscopic nephrectomy since 2010.[24] Defendants argue that because Dr. Danoff had not performed the same type of surgery that Mr. Scharf had in the year prior to Mr. Scharf's surgery, Dr. Danoff does not meet the requirements of A.R.S. § 12-2604(A)(2)(a).

But Section 12-2604(A)(2)(a) does not provide that the expert must have performed the same surgery in the year preceding the incident in question. Rather, Section 12-2604(A)(2)(a) provides that the expert must have devoted a majority of his professional time

---

[24] Deposition of Dudley Danoff, M.D., at 32:23-33:9, Exhibit 4, Motion for Summary Judgment, Docket No. 79.

to "[t]he active clinical practice of the same health profession as the defendant and, if the defendant is or claims to be a specialist, in the same specialty or claimed specialty." Dr. Danoff testified that he was a "hands-on urologist", that approximately 40 percent of his professional activities in any given year involve performing surgery, and that 70 percent of his practice "is urologic oncology."[25] In the year prior to Mr. Scharf's surgery, Dr. Danoff had devoted the majority of his professional time to the active clinical practice of urology. Dr. Danoff meets the requirements of Section 12-2604(A)(2)(a), and thus he is qualified to render standard of care opinions in this case.

But even if Dr. Danoff is qualified to offer standard of care opinions as to informed consent, which he is, defendants argue that plaintiffs' informed consent claims still fail because Mrs. Scharf testified that "even if someone told you that the surgery might result in death," Mr. Scharf still would have proceeded with the surgery.[26] Defendants argue that this testimony contradicts Mrs. Scharf's averments in her recent declaration and thus her declaration is a sham declaration. "Under" the Ninth Circuit's "'sham' affidavit rule, 'a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.'" Hambleton Bros. Lumber Co. v. Balkin Enterprises, Inc., 397 F.3d 1217, 1225 (9th Cir. 2005) (quoting Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991)). Defendants also argue that the declarations of Mrs. Scharf's daughters are sham declarations.

---

[25]Id. at 30:23-31:17.

[26]Deposition of Helen Scharf at 55:15-19, Exhibit 1, Reply in Support of Motion for Summary Judgment, Docket No. 84.

Defendants' sham affidavit argument fails. Mrs. Scharf's declaration does not contradict her deposition testimony. At her deposition, Mrs. Scharf testified that Mr. Scharf would have had the surgery even if he had been informed that death was a possible risk. In her declaration, she avers that Mr. Scharf would not have had the surgery if he had been given non-surgical options. She says nothing in her declaration about what Mr. Scharf would have done if he had been informed that the surgery could result in paralysis or death. As for the daughters' declarations, defendants have cited to no deposition testimony that contradicts their declarations. Neither Mrs. Scharf's nor her daughters' declarations are sham declarations. And, their declarations, along with Dr. Danoff's testimony, create genuine issues of material fact as to plaintiffs' informed consent claims. Defendants are not entitled to summary judgment on plaintiffs' informed consent claims.

As for plaintiffs' claims based on allegations of negligent post-operative care, plaintiffs contend that Dr. Trabucco failed to timely determine the cause of Mr. Scharf's loss of sensation and paralysis in his lower extremities and to timely transfer Mr. Scharf to Sunrise Hospital. Dr. Trabucco testified that he was contacted by Dr. Basta around 3 a.m. on September 25,[27] but he did not go to the hospital until 7 a.m.[28] Plaintiffs contend that this delay fell below the standard of care. In support of this contention, plaintiffs cite to the

---

[27]Deposition of Arnaldo Trabucco at 151:21-23, Exhibit D, Opposition to Arnaldo Trabucco, M.D.'s Motion for Summary Judgment, Docket No. 82.

[28]Trabucco Deposition at 153:14-15, Exhibit E, Opposition to Arnaldo Trabucco, M.D.'s Motion for Summary Judgment, Docket No. 82.

declaration of Dr. Mellman, an expert retained by plaintiffs. Dr. Mellman avers that "[a]ccepted standards of care require healthcare providers to recognize the signs and symptoms of developing paralysis like toe weakness and decreased ability to feel leg touch" and that "[d]elay in managing the paralysis resulted in the paralysis becoming irreversible."[29] However, the court has ruled that Dr. Mellman may not offer standard of care opinions in this case because unlike Dr. Trabucco, who is a board-certified urologist, Dr. Mellman is not a board-certified urologist.[30] Plaintiffs cannot rely on Dr. Mellman's testimony to support their claims of negligent post-operative care.

Plaintiffs also cite to Dr. Danoff's testimony. Dr. Danoff has opined that "[s]tandards of care required that a[] timely and appropriate aortogram be obtained to determine the cause of developing neurological signs and symptoms."[31] At his deposition Dr. Danoff was asked whether "knowing Mr. Scharf's medical history, his co-morbidities, the fact that this surgery was going to require a transfer to Las Vegas, that it was possible, once the abdominal aortic occlusion occurred, ... to prevent his death?"[32] Dr. Danoff replied that "[o]nly insofar as had the diagnosis been made in a more timely manner, I think it is reasonable to conclude that he

---

[29]Declaration of Donald Mellman, M.D., [etc.] at 1-2, ¶¶ 4 & 7, Exhibit K, Opposition to Arnaldo Trabucco, M.D.'s Motion for Summary Judgment, Docket No. 82.

[30]Order re Motion to Strike at 4 & 9, Docket No. 61.

[31]Expert Witness Testimony of Dudley Seth Danoff Regarding My Opinions Concerning Gerald Scharf at 3, ¶ 10, Exhibit 1, Motion to Strike [etc.], Docket No. 51.

[32]Danoff Deposition at 148:19-25, Exhibit 16, Motion for Summary Judgment, Docket No. 79.

might have survived."[33] Plaintiffs argue that this testimony suggests that if Dr. Trabucco had not waited for four hours to come see Mr. Scharf, it is possible that the diagnosis that the abdominal aorta was occluded might have been made earlier, and if it had been made earlier, Mr. Scharf might not have died.

Defendants argue that Dr. Danoff's testimony is insufficient to create a genuine issue of material fact. Defendants contend that Dr. Danoff could not say whether it would have been possible to save Mr. Scharf's remaining kidney if the transfer to Sunrise had taken place earlier[34] and that he only testified that "it is <u>reasonable</u> to conclude that [Mr. Scharf] might have survived"[35] if the diagnosis of an occluded abdominal aorta had been made earlier. Defendants also point out that Dr. Danoff testified that once the renal artery is completely occluded, there is about a 45-minute window in which to restore blood flow to the kidney.[36] Although defendants contend that Dr. Danoff was unable to say when the 45 minutes started in Mr. Scharf's case, they contend that it is undisputed that the travel time alone to Sunrise Medical Center exceeded 45 minutes. Thus, defendants argue that Dr. Danoff's testimony is not sufficient to create a genuine issue of material fact because Dr. Danoff could not testify

---

[33]Id. at 149:1-3.

[34]Danoff Deposition at 147:24-148:5, Exhibit 15, Motion for Summary Judgment, Docket No. 79.

[35]Danoff Deposition at 148:19-149:3, Exhibit 16, Motion for Summary Judgment, Docket No. 79 (emphasis added).

[36]Danoff Deposition at 147:1-14, Exhibit 18, Motion for Summary Judgment, Docket No. 79.

to a reasonable degree of medical probability that an earlier diagnosis and/or transfer to Sunrise Hospital would have prevented Mr. Scharf's death. Defendants argue that under Arizona law, Dr. Danoff must be able to state his opinion to a reasonable degree of medical probability and that because Dr. Danoff could not do this in terms of the post-operative care Mr. Scharf received from Dr. Trabucco, plaintiffs' negligent post-operative care claims should be dismissed.

However, "[u]nder some circumstances, a plaintiff's expert may opine as to possible causes of an injury if other evidence supports a causal connection." Benkendorf v. Advanced Cardiac Specialists Chartered, 269 P.3d 704, 706 n.4 (Ariz. Ct. App. 2012). Dr. Danoff's testimony suggests that it was possible that Mr. Scharf might have survived if an aortogram was done earlier and the occluded abdominal aorta discovered earlier. Dr. Danoff's testimony is sufficient to create genuine issues of material fact as to whether the post-operative care Mr. Scharf received from Dr. Trabucco was negligent. Defendants are not entitled to summary judgment on plaintiffs' claims that are based on allegations of negligent post-operative care.

## Conclusion

Defendants' motion for summary judgment[37] is granted in part and denied in part. The motion is granted as to plaintiffs' claims based on allegations that Dr. Trabucco negligently

---

[37]Docket No. 79.

performed Mr. Scharf's surgery.  These claims are dismissed with prejudice.  The motion is otherwise denied.

DATED at Anchorage, Alaska, this 11th day of January, 2017.

/s/ H. Russel Holland
United States District Judge
